IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 01-CV-2050-KING/O'SULLIVAN

MICHAEL G. CUMMINGS,

     Plaintiff,

v.

UNUM PROVIDENT CORPORATION
and UNUM LIFE INSURANCE
COMPANY OF AMERICA,

     Defendants.

v.

BAPTIST HEALTH SOUTH
FLORIDA, INC., a Florida not-for-
profit corporation,

     Intervenor.

_____/

## THIRD-PARTY BAPTIST HEALTH SOUTH FLORIDA'S MOTION TO INTERVENE

Third-party, Baptist Health South Florida, Inc. ("Baptist"), pursuant to Rules 24(a)(2) and 24(b)(2), Fed. R. Civ. P., hereby moves to intervene in this litigation for the limited purpose of litigating whether the long term disability plan at issue in this case, for which Baptist is the plan sponsor, comes within the "church-plan exception" to coverage by ERISA.  In support of this motion, Baptist states as follows:

### BACKGROUND

Baptist is a Florida not-for-profit corporation and the parent corporation to four hospitals operating in Miami-Dade and Monroe Counties, as well as certain other healthcare related entities.

CASE NO.: 01-CV-2050

Baptist and its subsidiaries employ over 8,000 employees. Baptist provides those employees with a variety of retirement and welfare benefits, including health and dental benefits, accidental death and disability insurance, life insurance, short and long-term disability insurance, and retirement plans. Baptist has always considered the employee benefit arrangements that it sponsors to be governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), and accordingly, has taken actions necessary to comply with ERISA's regulatory scheme.

The Plaintiff in this action, Michael Cummings, was employed as a physician by one of Baptist's subsidiaries, Baptist Health Enterprises (n/k/a Baptist Outpatient Services), until a motor vehicle accident forced him to take long-term disability leave. At the time of Dr. Cummings' accident, Defendant UNUM Life Insurance Company of America (n/k/a UNUM Provident Corporation) (collectively, "UNUM") was the insurer that provided disability income payments under Baptist's long term disability plan (the "LTD Plan"). Under UNUM's group disability Insurance policy, UNUM had full discretion to determine claims for benefit under the LTD Plan. A dispute subsequently arose between Plaintiff and UNUM over the coverage provided by the UNUM policy, culminating in the instant lawsuit which filed on May 21, 2001.

On March 15, 2002, Plaintiff's counsel filed a motion for leave of Court to file a second amended complaint (the "Motion for Leave"). In Plaintiff's Motion for Leave, he makes a preemptive assertion that Baptist's LTD Plan is not regulated by ERISA, but rather falls within the "church plan exception" to ERISA coverage (ERISA § 3(33), 29 U.S.C. § 1002(33)).[1]   Plaintiff

---

[1]Plaintiff makes this assertion despite the fact that the claims he originally asserted in this action were predicated upon ERISA and, in light thereof, Plaintiff asserted that this Court had federal question jurisdiction in the matter.

-2-

CASE NO.: 01-CV-2050

raises the issue of whether the LTD Plan constitutes a church plan (the "Church Plan Issue"), and asserts several unsubstantiated facts in support of his position, in anticipation that UNUM will oppose the Motion for Leave, and thereafter move to dismiss the common law claims asserted in Plaintiff's second amended complaint, based upon ERISA preemption.[2]

In February 2002, Baptist first became aware of the *possibility* that Plaintiff would raise the Church Plan Issue in this case. Plaintiff's counsel expressed this intent by requesting affidavits from, and then (when that request was denied), seeking to depose a member of Baptist's Board of Trustees (Dr. Emit O. Ray) and a Corporate Director in Baptist's Compensation and Benefits Department (Robert Shirk).[3] In telephone conversations with Plaintiff's counsel regarding scheduling these depositions, Baptist's counsel indicated its strong interest in the Church Plan Issue.[4] Notwithstanding that, Plaintiff's counsel did not serve Baptist with a copy of the Motion for Leave -- Plaintiff's first Court filing to raise the Church Plan Issue. Rather, Baptist's counsel was first advised of the motion by UNUM's counsel, on March 25, 2002.

---

[2]In the second amended complaint, Plaintiff drops his original ERISA claims and replaces them with a common law breach of contract claim and a bad faith claim under Florida Statutes §§ 624.155 and 626.9541.

[3]Plaintiff's counsel initially made direct contact with three high-level representatives of Baptist, i.e., the Chief Executive Officer of Baptist Hospital of Miami, Inc., a member of Baptist's Board of Trustees and a Vice President in Baptist's Compensation and Benefits Department, without involving Baptist's legal counsel.

[4]On March 1, 2002, Baptist filed a Motion for Protective Order, or Alternatively, to Quash Subpoena, in which Baptist sought a brief postponement of these two depositions. Baptist was prompted to do so by Plaintiff's counsel's refusal to reschedule the depositions a week later. In its Motion for Protective Order, Baptist alerted the Court to its strong interest in the Church Plan Issue and the likelihood that Baptist would seek to intervene in the action if such issue was to be litigated. See Motion p. 2. Plaintiff's counsel cancelled these depositions on March 25, 2002, the day before they were to be taken.

-3-

On April 10, 2002, the Court granted Plaintiff's motion for leave to file a second amended complaint. As UNUM's response to the Plaintiff's Motion for Leave confirms that it will seek dismissal of Plaintiff's common law claims based upon ERISA preemption, it is certain that the Church Plan Issue will be litigated in this case. Thus, it is critical that Baptist have an opportunity to assert its position on the Church Plan Issue and provide relevant information to the Court. The Church Plan Issue has great significance to Baptist, well beyond this particular dispute, because the adjudication of it would impact all of Baptist's employee benefit plans, which it has considered (and desires) to be governed by ERISA. Baptist desires to intervene solely on the Church Plan Issue, while remaining neutral as to all other aspects of the dispute between Dr. Cummings and UNUM.

## MEMORANDUM OF LAW

### A.     Baptist Should Be Permitted to Intervene As A Matter of Right.

It is well established that, under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a party is entitled to intervene as a matter of right upon a showing that:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that the disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is not represented adequately by the existing parties to the suit.

Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing Athens Lumber Co., Inc. v. Fed. Election Comm'n, 690 F.2d 1364, 1366 (11th Cir. 1982)). Where these prerequisites are established, a district court has no discretion to deny leave to intervene. Purcell v. BankAtlantic Financial Corp., 85 F. 3d 1508, 1512 (11th Cir.), cert. denied, 519 U.S. 867 (1996). Moreover, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130   •   TELEPHONE (305) 789-3200

Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).

Baptist has satisfied each of the prerequisites to intervention as of right, under Rule 24(a)(2).

First, Baptist has plainly satisfied the timeliness requirement.  In determining whether an intervenor's motion to intervene is timely, a court must consider the following factors:

> [T]he length of time during which the [intervenor] knew or reasonably should have known of [its] interest in the case before moving to intervene, the extent of prejudice to the existing parties as a result of the [intervenor's] failure to move for intervention as soon as [it] knew or reasonably should have known of [its] interest, the extent of prejudice to the [intervenor] if [its] motion is denied, and the existence of unusual circumstances militating either for or against a determination that [its] motion was timely.

Chiles, 865 F.2d at 1213 (citing U.S. v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983)).

In Diaz v. S. Drilling Corp., 427 F.2d 1118, 1125 (5th Cir.), cert. denied, 400 U.S. 878 (1970), the Fifth Circuit applied these factors and found that a motion to intervene filed more than a year after the commencement of the initial lawsuit was nevertheless timely.  That decision was based largely on the finding that, at the time of intervention, there had been no "legally significant proceedings" other than the completion of discovery. The Fifth Circuit also found it significant that the motion to intervene would not cause any delay in the processing of the overall litigation. See id.

The facts of the instant case are even more compelling than Diaz in support of a finding that Baptist's motion is timely.  Baptist's motion was filed within two months of the time Baptist first became apprised that its interests might be implicated in this litigation.  Moreover, Baptist filed this request to intervene less than three weeks after the Church Plan Issue was initially raised in a document filed in this case, i.e., Plaintiff's Motion for Leave.  Even before that, in its Motion for Protective Order, Baptist alerted the Court to its strong interest in the Church Plan Issue and the possibility that it would seek to intervene on the issue.  While Baptist could have moved to intervene

-5-

CASE NO.: 01-CV-2050

sooner, to do so may have been premature (e.g., unnecessary) if the Court had not granted on Plaintiff's Motion for Leave.

Moreover, the procedural posture of this case does not render Baptist's motion untimely. Discovery has scarcely begun in this case. Similarly, this litigation will essentially return to square one now that Plaintiff's second amended complaint has been accepted by the Court. Accordingly, Baptist's intervention will not cause any delay in the progress of the case. Based upon the foregoing, the timeliness factor, under Rule 24(a) (2), has clearly been met.

Second, because Baptist's interest in the Church Plan Issue is strong, and because the litigation of the issue in Baptist's absence may directly and substantially impair its interest, the second and third prerequisites, under Rule 24(a)(2), are soundly established.[5/] It is beyond reasonable dispute that Baptist has a legally protectable interest in the determination of whether the myriad employee benefit plans that it sponsors falls within the "church-plan exception" to ERISA. In addition to a group LTD Plan, Baptist provides its employee with, *inter alia*, employee health insurance, life insurance, a cafeteria/flexible benefit plan, and retirement plans, all of which it has consistently considered to be regulated under a single, overarching federal statute, ERISA. Moreover, it is Baptist's strong desire that these employee benefit arrangements be governed by ERISA, which (contrary to Plaintiff's one-sided explanation) provides significant regulatory protection for plan participants and beneficiaries.[6/]

─────────────────────

[5/]"The nature of the [intervenor's] interest and the effect that the disposition of the lawsuit will have on [its] ability to protect that interest are closely related issues. 'The second cannot be answered without reference to the first.'" Chiles, 865 F.2d at 1214 (quoting Hobson v. Hansen, 44 F.R.D. 18, 30 (D.D.C. 1968)).

[6/]In the absence of ERISA coverage, the vacuum will be filled in part by a mix of different Florida state laws whose application to Baptist's employee benefit plans is not necessarily clear.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 789-3200

CASE NO.: 01-CV-2050

Indeed, ERISA is designed, in large part, "to protect...the interests of participants in employee benefit plans," 29 U.S.C. § 1001(b). Accordingly, among other things, participants in ERISA plans are entitled to plan descriptions, notice of changes of benefit arrangements, benefit claims and appeal rights, and notices of accrued non-forfeitable pensions. See 29 U.S.C. §§ 102-1025. Participants in plans regulated by ERISA are also granted crucial substantive rights, such as non-discrimination requirements governing health care and pension plan participation, and a statutory basis for recovering attorneys' fees in lawsuits brought to vindicate ERISA rights. See, e.g., 29 U.S.C. §§ 1182 (anti-discrimination), 1132(g) (attorneys' fees). Further, the actions of those responsible for administering an ERISA plan are governed by a set of strict fiduciary duties, a breach of which can open an ERISA fiduciary to liability, including potential personal liability. See 29 U.S.C. § 1009. State law would not provide equivalent rights if these plans are not regulated by ERISA.[2] In exchange for the extensive obligations that ERISA imposes on employers for the protection of plan participants and to encourage employers to provide generous benefit plans, ERISA preempts common law tort, breach of contract and other claims, thereby protecting employers from extra-contractual damages awards that may be available to litigants under common law. In its capacity as an employer and the sponsor of a variety of employee benefit plans, Baptist has a significant and continuing interest in having its benefit plans governed by ERISA.

---

[2]One important example of substantive employee protections offered by ERISA are COBRA benefits, which afford terminated employees and their spouses and dependents the right to continue group health coverage at a reduced cost. 29 U.S.C. §§ 1161-67; 26 U.S.C. § 4980B. If a group health plan is deemed a church plan, COBRA will not apply. See Internal Revenue Service P.L.R. 94-010-36 (Jan. 7, 1994). Florida provides its own continued coverage rules, which not only are not as generous as those found under federal law, but most importantly, only apply to covered individuals who worked for companies that employ fewer than twenty employees. See Fl. Stat. Ann. § 627.6692(4)(h). Thus, in the absence of ERISA's application, Baptist's employees will possess no legal rights governing health care continuation insurance.

-7-

CASE NO.: 01-CV-2050

Based upon the foregoing, barring Baptist's intervention in the instant matter would clearly impair its substantial interest. Determination of this issue could have potential *stare decisis* effects on future litigation involving not only Baptist's LTD Plan, but all of the employee benefit plans Baptist currently considers to be governed by ERISA. See Chiles, 865 F.2d at 1214 ("Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply that practical disadvantage which warrants intervention as of right") (citations omitted).

As to the final element under Rule 24(a), it is clear that UNUM cannot and will not adequately represent Baptist's interests in this matter. The Supreme Court has held that the inadequate representation requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972). Intervention should be permitted "unless it is clear that [the defendant] will provide adequate representation." Chiles, 865 F.2d at 1214 (citation omitted).[8]

UNUM's representation of Baptist's interests will be inadequate for the following two reasons. First, when litigating the Church Plan Issue, UNUM will not be privy to the knowledge

---

[8] The Eleventh Circuit has indicated that there is a "general rule that adequate representation exists if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed interven[e]r, and if the representative does not fail in fulfillment of his duty." Clark v. Putnam County, 168 F.3d 458, 461 (11th Cir. 1999) (internal quotation and citations omitted). However, showing any of these factors is not difficult. Here, *inter alia,* UNUM plainly has a motivation to litigate this issue which differs, and pales in comparison to, Baptist's interest in retaining ERISA's coverage for all of its benefit plans going forward. This difference in positioning (together with the far greater knowledge possessed by Baptist), even if not resulting in an adversity, presents sufficient "risk that UNUM might not adequately represent" its interest. Meek v. Metropolitan Dade County, Fla., 985 F. 2d 1471, 1478 (11th Cir. 1993).

-8-

of Baptist's corporate affairs and benefits administration which will be critical to a proper determination of the Church Plan Issue.  Moreover, while the interests of UNUM and Baptist may be aligned to some degree (e.g., both desire a ruling that the LTD Plan is not a church plan), the magnitude of their interests do not compare.  For UNUM, the adjudication of the Church Plan Issue is significant merely for its impact on this litigation.  UNUM has no interest with regard to the impact of the Church Plan Issue on Baptist's other employee benefits plans.  Moreover, even with respect to the LTD Plan, UNUM was long ago replaced as Baptist's LTD insurer, and thus it has no interest in the status of Baptist's LTD Plan going forward.

In contrast, Baptist's interests in the Church Plan Issue are expansive and long term.  Baptist provides a wide variety of employee benefit plans, *none of which* would be regulated by ERISA if Baptist is deemed to be a church plan sponsor.[9]  Therefore, Baptist clearly would not be adequately represented if it were denied intervention.  See 7C Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1909 (2d ed. 2001)  ("[If an intervenor's] interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate").

**B.     Baptist Should Be Granted Permissive Intervention In This Case.**

Even if Baptist is not permitted to intervene as a matter of right, permissive intervention should be allowed under Rule 24(b)(2), Fed. R. Civ. P.  A party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense in the main action have a question of law or fact in common.  <u>Chiles v. Thornburgh</u>, 865 F.2d 1197,

---

[9]Baptist can elect prospectively to have its pension plans regulated by ERISA.  <u>See</u> I.R.C. § 410(d).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
MUSEUM TOWER, 150 WEST FLAGLER STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 789-3200

CASE NO.: 01-CV-2050

1213 (11th Cir. 1989) (citing Sellers v. U.S., 709 F.2d 1469, 1471 (11th Cir. 1983). Unlike intervention of right, "[t]he decision to allow permissive intervention...lies within the discretion of the district court." Athens Lumber Co., Inc., 690 F.2d 1364, 1367 (11th Cir. 1982) (citations omitted). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2).

As noted above, Baptist's motion for intervention is clearly timely, since (i) there was nothing on the face of plaintiff's initial or first amended complaint raising the Church Plan Issue, (ii) Baptist acted promptly after being put on notice that its interests were being implicated; and (iii) Baptist's intervention would do nothing to slow the progress of this case, in which discovery has hardly commenced. Moreover, Baptist's claim that its employee benefit plans are governed by ERISA and not "church plans" clearly presents the same (not merely similar) legal and factual issues that will be litigated between Plaintiff and UNUM.

Baptist seeks to intervene only for the limited purpose of determining the applicability of ERISA's "church-plan exception" to its LTD Plan. The original parties to this case will not be forced to litigate matters that would not have arisen but for Baptist's intervention. See Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1381-82 (7th Cir. 1995) (permitting intervention where the intervenor's defense (asserted after the original defendant defaulted) merely forced the plaintiff to prove the claim that it had initiated); Sellers v. U.S., 709 F.2d 1469, 1472 (11th Cir. 1983) (denying intervention when it would have resulted in the introduction of collateral issues).

Furthermore, Baptist's unique knowledge of the issue raised may aid the Court in evaluating whether the "church-plan" exception applies, thereby conserving both the parties' and the Court's time and resources. See League of United Latin Am. Citizens v. Clements, 884 F.2d 185, 189 (5th Cir. 1989) (denying intervention because applicant intervenor "could not significantly contribute to

-10-

CASE NO.: 01-CV-2050

the development of the factual issues"); 6 <u>Moore's Federal Practice</u> § 24.10[2][b] (3d ed. 2001).

Because UNUM and Baptist have vastly different stakes in resolving the Church Plan Issue, Baptist's

interests cannot be adequately represented in this litigation absent intervention.

In seeking to intervene either as of right or permissively, Baptist recognizes that Rule 24(c)

requires the motion to be accompanied by a pleading setting forth the claim or defense for which

intervention is sought.  However, federal courts, including the Eleventh Circuit, have applied this

procedural requirement with leniency and  have made exceptions to the requirement of submitting

a pleading where the court was otherwise apprised of the grounds for the motion, and where the lack

of an initial pleading by the intervenor causes no prejudice to the other parties.  <u>See</u> <u>Loyd v. Ala.</u>

<u>Dept. of Corrections</u>, 176 F. 3d 1336, 1341 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 1061 (1999); <u>Piambino</u>

<u>v. Bailey</u>, 757 F. 2d 1112, 1121 (11th Cir. 1985), <u>cert</u>. <u>denied</u>, 476 U.S. 1169 (1986); <u>Beckman</u>

<u>Industries, Inc. v. International Insurance Co.</u>, 966 F.2d 470, 474-75 (9th Cir. 1992); <u>Spring</u>

<u>Construction Co., Inc. v. Harris</u>, 614 F. 2d 374, 376-77 (4th Cir. 1980) (proper approach is to

disregard non-prejudicial technical non-compliance with Rule 24(c)).

This motion clearly explains Baptist's interest in this matter -- namely, to argue its position

that Baptist's employee benefit plans are governed by ERISA and do not come within the "church

plan exception" to ERISA.  However, as explained above, beyond that issue Baptist remains neutral

as to the dispute between Plaintiff and Cummings.  Accordingly, it attaches neither a claim nor a

defense to this motion.  Rather, Baptist requests that the Court set a time for it to submit its brief on

the Church Plan Issue at or about the time that either UNUM responds to the second amended

-11-

CASE NO.: 01-CV-2050

complaint by filing its motion to dismiss or Plaintiff responds to UNUM's motion to dismiss, or at such other time that the Court deems appropriate.[10/]

For the foregoing reasons, Baptist respectfully requests that this Court grant its motion for intervention in the above-captioned proceeding.[11/] Baptist's counsel has contacted both Plaintiff's counsel and UNUM's counsel with regard to this motion. UNUM's counsel does not oppose Baptist's intervention in this case, but Plaintiff's counsel does.

---

[10/]If a claim or defense must be submitted presently, Baptist will file a motion to dismiss Plaintiff's second amended complaint, a declaratory judgment action seeking a declaration of the status of its employee benefit plans, or an alternative, appropriate pleading.  WJA Realty Limited Partnership v. Nelson, 708 F. Supp. 1268 (S.D. Fla. 1989) (pleading under Rule 24(c) is not limited to a Rule 7(a) pleading (i.e., a complaint or answer).

[11/]In the event that the Court finds that intervention is not appropriate as of right or permissively, Baptist seeks leave to intervene as amicus curiae solely on the Church Plan Issue. Baptist's interests are, or may be, significantly impacted in this litigation and, thus, at a minimum, it should be provided the opportunity to bring its views, legal arguments, and factual knowledge to the attention of the Court through special amicus curiae status.

-12-

CASE NO.: 01-CV-2050

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON P.A.
150 West Flagler Street
Miami, FLA   33130
(305) 789-3200
(305) 789-3395

By: _Susan Toepfer_
    ROBERT T. KOFMAN
    Florida Bar No. 335266
    rkofman@swmwas.com
    SUSAN J. TOEPFER
    Florida Bar No. 0004839
    stoepfer@swmwas.com

and

HOGAN & HARTSON
555 13th Street, N.W.
Washington, D.C. 20008

Attorneys for Intervenor
Baptist Systems of South Florida, Inc.

-13-

CASE NO.: 01-CV-2050

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was furnished, *via U.S. mail and facsimile*, to John J. Spiegel, P.A., 700 Concord Building, 66 West Flagler Street, Miami, Florida 33130 and John Kolinski, Esq., Shutts and Bowen, LLP, 201 South Biscayne Boulevard, Miami, Florida 33131 on this $\underline{15}^{th}$ day of April, 2002.

_Susan Toepf_

SUSAN J. TOEPFER

G:\W-LIT\34042\059\m-intervene.wpd

-14-